Parker C. J.
delivered the opinion of the Court. This action is brought to recover a sum alleged to have been insured by the defendants on the brig Hesper, belonging to the plaintiff, on a voyage from Martinico to her port of discharge, and another sum on her cargo. The usual evidence of such con *287 tract, a policy, never having been made, the only question subraitted is, whether there was an agreement to insure ; every thing else necessary to entitle the plaintiff to recover being agreed by the parties. And it is certain, that if a contract was ■ made, the mere want of a policy will not prevent the plaintiff from recovering.
We are to inquire, then, whether the correspondence Detween the parties, which is submitted to us, does constitute a contract binding upon both parties; if it does not, whatever might be the expectations of either, it is only an attempt to make a contract, which has failed. The letter from the plaintiff of the 29tb of December contained an inquiry only, as to the rate of premium at which the insurance might be done in the defendants’ office, and the plaintiff was entirely at liberty to accept or refuse the terms which were proposed in answer ; even if he had made no reply to the defendants’ letter, there would have been neither a breach of contract nor of civility. This answer was written on the 1st of January, and would reach the post-office in Kennebunk, the place of the plaintiff’s residence, on the 3d. It was replied to on the day of the arrival, by an acceptance of the terms, and a direction to make out the policy and deliver it to the plaintiff’s agent in Boston, who was authorized to give a promissory note for the premium in common form. But on the 2d of January, before the defendants’ letter to the plaintiff could have been received, another letter was written by the defendants, retracting the offer made in the former letter, and signifying a determination not to insure upon that vessel upon any terms. These letters crossed each other upon the road. It is contended by the plaintiff, that the bargain was complete at the moment he wrote and put into the mail his letter signifying his acceptance of the terms offered by the defendants, that the treaty was open until they should have received that letter, and that in the mean time they had a right to withdraw their offer. We adopt the latter opinion as the most reasonable. The offer did not bind the plaintiff until it was accepted, and it could not be accepted, to the knowledge of the defendants, until the letter announcing the acceptance was received, or at most, until the regular time for its arrival by mail had elapsed. Had the vessel arrived in *288 safety at Kennebunk on the 2d, or on the morning of the 3d. t^le plaintiff would not have accepted the offer, and was not bound to accept; so that the defendants would not have been ent¡t]eci t0 any premium , and both must be bound, in order to make the contract binding upon either, unless time is given by one to the other, in which case, perhaps, he may be bound, although the other is not; at least we should think this reasonable in mercantile contracts, though it was decided otherwise in the case of Cooke v. Oxley, 8 D. & E. 653.[1] In that case, the declaration stated, that the defendant proposed to the plaintiff to sell him tobacco, at a certain price, and at the request of the plaintiff, gave him until four o’clock, P. M., to consent or disagree to the proposal. The plaintiff averred, that he did agree to purchase, and gave notice thereof to the defendant before four o’clock ; that he offered to pay the price, and requested the defendant to deliver the tobacco, which he refused. The court, without hearing the counsel for the defendant, said that it was an engagement all on one side, and was therefore nudum pactum ; and Butter J. said there was neither damage to the plaintiff, nor advantage to the defendant, at the' time when the contract was first made. The judgment was affirmed in the Exchequer Chamber. This was treated by the plaintiff’s counsel as an actual sale upon condition, to avoid the statute of frauds ; so that the real question, in that case, was, whether there was a bargain in fact amounting to a sale, as the question here is, whether there was an insurance in fact, the usual evidence of which only was left unfinished ; and it is as necessary that the obligation should be mutual in this case as in that. See also Payne v. Cave, 3 D. & E. 148. It is suggested, that the putting the letter into the mail was a completion of the bargain ; but if the vessel had arrived, and the plaintiff had recalled his letter, or if he had sent on an express to announce his refusal to accept, before the letter arrived, we think he would not have been held to pay the premium.
No authority has been cited on the side of the plaintiff to support his case, and we cannot perceive, upon general principles, any ground upon which he can recover. There seems *289 to have been locus penitential for both parties, no change of circumstances having occurred, nor any information being received, until the loss of the vessel was known, which was nearly three months after the correspondence ceased between the parties ; during all which time the plaintiff might have got insured elsewhere if the risk was a fair one. Had the vessel arrived after the defendants’ letter was received, and before it was answered, there can be no doubt the plaintiff might have declined entering into the bargain, because he then had made no contract; and so long as it continued open for the plaintiff, it must have been open for the defendants, and their revocation was made before the plaintiff had opportunity to accept.
It was suggested in the argument, that the correspondence between these parties formed what is called in the civil law a pollicitation, a sort of contract which arises from a promise made by one party only, without any consent or acceptance by the other ; but this is a peculiar kind of obligation which exists only from an individual towards a body politic or government. Heinecc. sec. Ord. Pandect. Part 7, §§ 334, 335. In a note to the first of these sections the author says, “ For although promises made otherwise always require the consent and acceptance of the other party, yet here ” (that is, in promises made to the state) the law itself accepts the promise for the state.”[1]
Plaintiff nonsuit.[2]

 See Tucker v. Woods, 12 Johns. R. 190; Humphries v. Carvalho, 16 East, 44

 Since the above case was decided, the case of Adams v. Lindsell, 1 B. & A,681, has been seen, which bears strongly upon this case, and might possibly, if it had been referred to in the argument, have occasioned a delay of judgment for farther consideration; and yet perhaps there is a material difference in the subject matter of the two cases, of sufficient importance to warrant a different judgment. The case referred to was on a contract, which was held to amount to a sale of goods; nothing more was necessary to complete it between the parties, than for the one to agree to sell, and the other to buy; there was no contingency, on the happening of which either could be released, and it was held, that as one offered to sell on certain terms, if he received an answer in due course of mail, and the other agreed to take upon those terms, the writing of the letter by the latter and putting it into the first mail perfected *290 the bargain, so that there was nothing left to be done but a delivery of the goods purchased, which was not essential to complete the sale between the two; and the court disregarded the case of Cooke v. Oxley, or thought it did not apply, stress being laid upon it by the counsel for the defendant. It was thought, probably, that the bargain being left open for one of the parties until four o’clock, P. M., made the case of Cooke v. Oxley a different one in princi pie from that under consideration. And the case above reported differs from the case in B. & A., inasmuch as there was not in the latter any notice of a revocation of the offer to sell.
But a more material difference perhaps is, that a treaty respecting insurance is necessarily subject to contingencies while it is forming. An arrival of the vessel before the plaintiff wrote his letter of the 3d would certainly have put an end to it; and perhaps afterwards, if, before the defendants could have received any acceptance of their offer, notice had been given by the plaintiff that he did not choose to proceed in the contract. Whether it would be so, if intelligence of a loss had arrived between the offer of the defendants to insure, and the notice of acceptance by the plaintiff received, quaere. Possibly so essential a change of circumstances, added to the certainty that the plaintiff could get no other insurance, would give him a claim upon the defendants. — Reporter.

See Thayer v. Middlesex Mutual Fire Ins. Co. 10 Pick. 326; Mactier v. Frith, 6 Wendell, 155; Routledge v. Grant, 1 Moore & P. 717; S. C. 3 Carr. & Payne, 267.